JOHN S. GORDON
United States Attorney
RONALD L. CHENG
Assistant United States Attorney
Acting Chief, Criminal Division
STEPHEN A. CAZARES
Special Assistant United States Attorney
(Cal. State Bar #: 201864)
JILL FEENEY
(Cal. State Bar #: Pending)
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-2429
Facsimile: (213) 894-6269

ENTERED ON ICMS
FEB 2 2 2002

FILED
2002 FEB 19 AM 11: 10
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TIGRAN BABAKHANYAN,<br>GREGORY ALEXANIAN, and<br>PETER YACOOB,<br><br>Defendants. | No. CR 01-949-FMC<br><br>PLEA AGREEMENT FOR DEFENDANT TIGRAN BABAKHANYAN |

1. This constitutes the plea agreement between TIGRAN BABAKHANYAN ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities.

PLEA

2. Defendant agrees to plead guilty to count one of the four count indictment in United States v. Tigran Babkahanyan et al., No. CR 01-949-FMC.

53

NATURE OF THE OFFENSE

3. In order for defendant to be guilty of count one, which charges a violation of Title 18, United States Code, Section 1029(b)(2), the following must be true: (1) defendant agreed with at least one other person; (2) knowing and intentionally; (3) without the authorization of the issuer of the access device; (4) to solicit a person for the purpose of offering an access device; (5) in a manner affecting interstate commerce; and (6) in furtherance of the conspiracy, the defendant and others committed an overt act. Defendant admits that defendant is, in fact, guilty of this offense as described in count one of the indictment.

PENALTIES

4. The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1029(b)(2) is: five years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

5. Supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

FACTUAL BASIS

6. Defendant and the USAO agree and stipulate to the statement of facts appearing at the end of this plea agreement, which is incorporated herein by reference.

WAIVER OF CONSTITUTIONAL RIGHTS

7. By pleading guilty, defendant gives up the following rights:

a) The right to persist in a plea of not guilty.

b) The right to a speedy and public trial by jury.

c) The right to the assistance of counsel at trial, including, if defendant could not afford an attorney, the right to have the Court appoint one for defendant.

d) The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e) The right to confront and cross-examine witnesses against defendant.

f) The right, if defendant wished, to testify on defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

g) The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

By pleading guilty, defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

SENTENCING FACTORS

8. Defendant understands that the Court is required to consider and apply the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") but may depart from those guidelines under some circumstances.

9. Defendant and the USAO agree and stipulate to the following applicable sentencing guideline factors:

| | | |
|---|---|---|
| Base Offense Level: | 6 | [U.S.S.G. § 2F1.1(a)] |
| Intended loss $42,000: | +5 | [U.S.S.G. § 2F1.1(b)(1)(D)] |
| More than one victim/ more than minimal planning: | +2 | [U.S.S.G. § 2F1.1(b)(2)] |
| Trafficking of any unauth. access device: | +2 | [U.S.S.G. § 2F1.1(b)(5)(B)] |
| Acceptance of Responsibility | -2 | [U.S.S.G. § 3E1.1(a)] |
| Total Offense Level: | 13 | |

The USAO will agree to a downward adjustment for acceptance of responsibility only if the conditions set forth in paragraph 12 are met. The parties agree that no additional specific offense characteristics, adjustments, or departures apply. If, however, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section. The parties agree that the Sentencing Guidelines in

effect at the time of the commission of the offense apply. The defendant waives any argument in any proceeding that the Sentencing Guidelines in effect at the time of sentencing apply to his case.

10. There is no agreement as to defendant's criminal history or criminal history category.

11. The stipulations in this agreement do not bind either the United States Probation Office or the Court. The Court will determine the facts and calculations relevant to sentencing. Both defendant and the USAO are free to: (a) supplement the facts stipulated to in this agreement by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the calculation of the sentence, and (c) argue on appeal and collateral review that the Court's sentencing calculations are not error, although each party agrees to maintain its view that the calculations in paragraph 9 are consistent with the facts of this case.

<u>DEFENDANT'S OBLIGATIONS</u>

12. Defendant agrees:

a) To plead guilty as set forth in this agreement.

b) To not knowingly and willfully fail to abide by all sentencing stipulations contained in this agreement.

c) To not knowingly and willfully fail to: (i) appear as ordered for all court appearances, (ii) surrender as ordered for service of sentence, (iii) obey all conditions of any bond, and (iv) obey any other ongoing court order in this matter.

d) Not to commit any crime; however, offenses which would be excluded for sentencing purposes under U.S.S.G. §

4A1.2(c) are not within the scope of this agreement.

e) To not knowingly and willfully fail to be truthful at all times with Pretrial Services, the U.S. Probation Office, and the Court.

f) To pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay.

THE USAO'S OBLIGATIONS

13. If defendant complies fully with all defendant's obligations under this agreement, the USAO agrees:

a) To abide by all sentencing stipulations contained in this agreement.

b) At the time of sentencing to move to dismiss the remaining counts of the indictment as against defendant. Defendant agrees, however, that at the time of sentencing the Court may consider the dismissed counts in determining the applicable Sentencing Guidelines range, where the sentence should fall within that range, and the propriety and extent of any departure from that range.

c) At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, to recommend a two-level reduction in the applicable sentencing guideline offense level, pursuant to U.S.S.G. § 3E1.1, and an additional one-level reduction if available under that section.

BREACH OF AGREEMENT

14. If defendant, at any time between the execution of this agreement and defendant's sentencing on a non-custodial sentence

or surrender for service on a custodial sentence, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, defendant will not be able to withdraw defendant's guilty plea, and the USAO will be relieved of all of its obligations under this agreement.

15. Following a knowing and willful breach of this agreement by defendant, should the USAO elect to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a) Defendant agrees that the applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the USAO's discovery of any knowing and willful breach by defendant.

b) Defendant gives up all defenses based on the statute of limitations, any claim of preindictment delay, or any speedy trial claim with respect to any such prosecution, except to the extent that such defenses existed as of the date of defendant's signing of this agreement.

<u>LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK</u>

16. Defendant gives up the right to appeal any sentence imposed by the Court, and the manner in which the sentence is determined, provided that (a) the sentence is within the statutory maximum specified above and is constitutional, (b) the Court does not depart upward in offense level or criminal history category, and (c) the Court determines that the total offense level is 13 or below and imposes a sentence within the range

corresponding to the determined total offense level. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.

17. The USAO gives up its right to appeal the Court's Sentencing Guidelines calculations, provided that (a) the Court does not depart downward in offense level or criminal history category and (b) the Court determines that the total offense level is 13 or above.

RESULT OF VACATUR, REVERSAL OR SET-ASIDE

18. Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining counts of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty plea on any remaining counts of conviction, with both the USAO and defendant being released from all of their obligations under this agreement, or (c) leave defendant's remaining conviction, sentence, and plea agreement intact. Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

SCOPE OF AGREEMENT

19. The Court is not a party to this agreement and need not accept any of the USAO's sentencing recommendations or the

parties' stipulations. Even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from any stipulation, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. No one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

20. This agreement applies only to crimes committed by defendant, has no effect on any proceedings against defendant not expressly mentioned herein, and shall not preclude any past, present, or future forfeiture actions.

NO ADDITIONAL AGREEMENTS

21. Except as set forth herein, there are no promises, understandings or agreements between the USAO and defendant or defendant's counsel. Nor may any additional agreement, understanding or condition be entered into unless in a writing signed by all parties or on the record in court.

This agreement is effective upon signature by defendant and

## STATEMENT OF FACTS

Had this matter gone to trial, the United States would have proven the following beyond a reasonable doubt through witnesses, testimony, and other competent and admissible evidence:

1. The defendant, TIGRAN BABAKHANYAN ("BABAKHANYAN"), and his co-conspirators, Gregory Alexanian and Peter Jacoob, agreed to obtain bank customer profiles from Bank of America and Washington Mutual Bank for the purpose of selling these profiles. These profiles contained, among other things, the bank account holders' names, birth dates, addresses, bank account numbers and social security numbers.

2. Bank of America, Washington Mutual Bank and the account holders did not authorize BABAKHANYAN and his co-conspirators to have access to the bank account numbers and the other information contained in the profiles for the purpose of selling this information.

3. BABAKHANYAN and his co-conspirators intended to sell the bank customer profiles to third persons who would use the information contained in the profiles to take money deposited in the bank accounts of those customers.

4. Bank of America and Washington Mutual Bank are insured by the Federal Deposit Insurance Corporation and conduct business in interstate commerce.

5. In furtherance of the conspiracy and to accomplish its objectives, on or about and between June 2001 and July 17, 2001, BABAKHANYAN and his co-conspirators committed various overt acts within the Central District of California and elsewhere, including, but not limited to the following: On or

about July 2, 2001, BABAKHANYAN sold four Washington Mutual Bank customer profiles and two Bank of America customer profiles to the undercover informant for $1,000 each.

6. At the request of BABAKHANYAN, Gregory Alexanian obtained a total of 19 Washington Mutual Bank customer profiles from Peter Yacoob and obtained 7 Bank of America customer profiles. BABAKHANYAN had 2 additional unauthorized access devices, specifically two credit card account numbers. BABAKHANYAN sold a total of 8 customer profiles to the undercover informant for $1,000 each. The loss intended by BABAKHANYAN was $1,500 per access device, for a total of $42,000. The scheme in which BABAKHANYAN and his co-conspirators were involved had more than one victim, involved more than minimal planning and included trafficking in authorized access devices.

an Assistant United States Attorney.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

JOHN S. GORDON
United States Attorney

[signature] 11/27/01
JILL FEENEY Date
Assistant United
States Attorney

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the Sentencing Guideline provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

[signature] Date: 2-18-2002
TIGRAN BABAKHANYAN
Defendant

I am TIGRAN BABAKHANYAN'S attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his/her rights, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this agreement. To my knowledge,

my client's decision to enter into this agreement is an informed and voluntary one.

MATTHEW CARGAL
Counsel for Defendant
Tigran Babakhanyan

2/18/02
Date

# CERTIFICATE OF SERVICE

I, **Shaton L. McDaniel**, declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

**PLEA AGREEMENT FOR DEFENDANT TIGRAN BABAKHANYAN**

[ ] Placed in a closed envelope, for collection and interoffice delivery addressed as follows:

[x] Placed in a sealed envelope for collection and mailing via United States Mail, addressed as follows:

[ ] By hand delivery addressed as follows:

[ ] By facsimile as follows:

[ ] By messenger as follows:

[ ] By federal express as follows:

**Matthew Cargal, Esq.**
**99 South Lake Avenue**
**Suite 200**
**Pasadena, California 91101**

This Certificate is executed on **February 19, 2002**, California.

I certify under penalty of perjury that the foregoing is true and correct.

Shaton L. McDaniel